1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHERRY HAYES,

11               Plaintiff,                    No. CIV S-04-2652 KJM

12         vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15               Defendant.                    ORDER
     _____/
16

17               Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and

19   Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act

20   ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for

21   summary judgment or remand and grant the Commissioner's cross-motion for summary

22   judgment.

23   /////

24   /////

25   /////

26   /////

                                                 1

I. Factual and Procedural Background

In a decision dated July 29, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of left lateral epicondylitis, left shoulder strain and personality disorder but these impairments do not meet or medically equal a listed impairment; plaintiff retains the residual functional capacity to perform light work that would require only occasional reaching in all directions with her non-dominant left upper extremity and work that is simple, repetitive and would not require extensive contact with coworkers, supervisors and the public; plaintiff can perform her past relevant work

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

as a cannery worker; and plaintiff is not disabled.  Administrative Transcript ("AT") 20.  Plaintiff

contends the ALJ improperly assessed the severity of her impairments, improperly discredited

her subjective complaints, and incorrectly found she could perform her past relevant work.

II.  Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is

based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

Substantial evidence means more than a mere scintilla of evidence, but less than a

preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

/////

/////

/////

3

III.  <u>Analysis</u>

     A.  Severity of Impairments

        Plaintiff contends the ALJ improperly assessed the severity of her left arm and mental impairments.  An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless claims."  <u>Smolen v. Chater</u> 80 F.3d 1273, 1290 (9th Cir. 1996).

        The ALJ found plaintiff suffered severe impairments of left lateral epicondylitis, left shoulder strain and personality disorder.  AT 20.  Plaintiff contends the extent of her impairments, however, is greater than that found by the ALJ.  The record fails to support plaintiff's contention.  Plaintiff underwent a comprehensive orthopedic evaluation by Dr. McIntire on June 5, 2004.  AT 218-221.  Functional limitations found by Dr. McIntire included a restriction on lifting and avoidance of extremely forceful pulling or pushing with the left upper extremity.  AT 221.  No other manipulative limitations were assessed.  Similar functional limitations were assessed by the state agency reviewing physician.  AT 142-149.  Although an electrodiagnostic study performed just prior to Dr. McIntire's examination noted electrophysiologic evidence of left carpal syndrome, the report specifically recommended correlation with physical exam, which as discussed above, was negative.  AT 257.[2]  The study also noted plaintiff's electromyogram of the upper extremities was within normal limits, including median enervated muscles distal to the wrists.  AT 256.  Physical examinations of plaintiff indicated that although plaintiff had a decreased range of motion in the left shoulder in

---

    [2]  <u>See</u> note 7 <u>infra</u>.

4

1    January and March 2003, plaintiff demonstrated full range of motion in the left shoulder by

2    September 30, 2003.  AT 157, 159, 207, 220.  On this record, there was no error in the ALJ's

3    assessment of plaintiff's physical impairments.

4            With respect to plaintiff's mental impairment, plaintiff contends the ALJ

5    committed error in not specifically addressing the GAF[3] of 55 assessed by Dr. Kalman.  AT 171.

6    The ALJ did not reject Dr. Kalman's assessment, as claimed by plaintiff.   Although Dr. Kalman

7    assessed plaintiff's GAF as 55 on the date plaintiff was examined, Dr. Kalman also found

8    plaintiff could relate and interact with supervisors and co-workers, could deal with the public,

9    was able to understand, remember, and execute simple one- and two-step job instructions and

10   was able to withstand the stress and pressures associated with daily work activities on a basic

11   level.  AT 171.  Although Dr. Kalman found plaintiff could not maintain concentration and

12   attention, the residual mental functional capacity found by the ALJ to limit plaintiff to work that

13   is simple and repetitive accommodated this limitation.  AT 20.  Similarly, the ALJ incorporated

14   the limitations found by examining psychiatrist Dr. Canty by limiting plaintiff to work that would

15   not require extensive contact with coworkers, supervisors and the public.  AT 20, 233.  The

16   ALJ's assessment of plaintiff's mental impairment is consistent with both examining

17   psychiatrists and plaintiff's treating general practitioner, who did not refer plaintiff for mental

18   health evaluation but prescribed some psychotropic medications as part of plaintiff's general

19   medical care.  AT 153-54, 159, 162, 166-67.  In light of this record, there was no error in failing

20   to discuss the assessments of the state agency physicians, which also are consistent with the

21   functional mental limitations found by the ALJ.  AT 182, 186-87.

22   /////

23

---

24         [3]   GAF is a scale reflecting the "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
25   Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms
     (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in
26   social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers.)

5

1    B.  Credibility

2         Plaintiff also contends the ALJ improperly discredited her subjective complaints.

3    The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's

4    discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v.

5    Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

6    credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

7    Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

8    supported by "a specific, cogent reason for the disbelief").

9         In evaluating whether subjective complaints are credible, the ALJ should first

10   consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

11   F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

12   the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

13   medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

14   (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

15   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

16   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

17   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

18   55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

19   and effect of symptoms, and inconsistencies between testimony and conduct also may be

20   relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

21   to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

22   the ALJ in determining whether the alleged associated pain is not a significant nonexertional

23   impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may

24   rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458

25   (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172,

26   177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering,

1  the Commissioner's reasons for rejecting the claimant's testimony must be clear and

2  convincing." <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.

3  1999).

4          Plaintiff testified she could not work because of pain and numbness in her left arm

5  and swelling in her feet, she could not sit or stand for more than an hour, and she could not deal

6  with people in public.  AT 36, 41-42, 44.  The ALJ discredited these limitations for several

7  reasons.  The ALJ noted the inconsistency between the extreme limitations claimed by plaintiff

8  and the objective evidence in the medical record.  AT 17-19, 142-49, 152-53, 156, 164, 169-171,

9  221.  The ALJ also noted that plaintiff's self-reported hobbies included activities that would be

10 precluded if plaintiff were as limited as she claimed.  AT 19, 105.  Contradictions between

11 plaintiff's statements and the report on her activities made by a friend also were factored into the

12 credibility determination.  AT 18-19, 98-103.  The ALJ also considered plaintiff's report to her

13 treating physician that her mental problems were improved with medications.  AT 17, 154.  The

14 ALJ also relied on inconsistencies in plaintiff's presentation upon psychiatric examination noted

15 by the examining psychiatrist.  AT 17, 230.  The factors considered by the ALJ were all valid and

16 supported by the record.  The ALJ's credibility determination was based on permissible grounds

17 and will not be disturbed.

18         C.  Past Relevant Work

19         Plaintiff contends the ALJ committed error at step four of the sequential

20 evaluation by finding plaintiff could perform her past relevant work as a cannery worker.

21 Plaintiff bears the burden of proof at step four; however, the ALJ must make the requisite factual

22 findings to support his conclusion.  <u>Pinto v. Massanari</u>, 249 F.3d 840, 844 (9th Cir. 2001).  To

23 find a plaintiff not disabled at step four, the ALJ must find plaintiff is able to perform: (1) the

24 actual functional demands and job duties of a particular past relevant job; or (2) the functional

25 demands and job duties of the occupation as generally required by employers throughout the

26 national economy.  <u>Id</u>. at 845.

1    "Social Security Regulations name two sources of information that may be used to

2  define a claimant's past relevant work as actually performed: a properly completed vocational

3  report and the claimant's own testimony" <u>Id</u>. (citations omitted).  "[T]he best source for how a

4  job is generally performed is usually the Dictionary of Occupational Titles."  <u>Id</u>. at 845-46

5  (citations omitted).

6    In this case, the ALJ specifically relied on the DOT[4] in determining plaintiff could

7  perform her past relevant work, citing section 529.686-014.[5]  AT 20, Finding no. 7.  Plaintiff

8  argues that limitations with respect to reaching with her left arm and holding objects with her left

9  hand precluded her from being able to do this kind of work.  The ALJ's determination, however,

10 is consistent with the record.  The ALJ limited plaintiff to occasional use of her left hand and

---

14    [4]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of
15  Occupational Titles (4th ed. 1991) ("DOT") is routinely relied on by the Social Security
   Administration "in determining the skill level of a claimant's past work, and in evaluating
   whether the claimant is able to perform other work in the national economy." <u>Terry v. Sullivan</u>,
16  903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill
   requirements.   The DOT is a primary source of reliable job information for the Commissioner.
17  20 C.F.R. § 404.1566(d)(1).

18    [5]  That section provides as follows:

19  **529.686-014 CANNERY WORKER (can. & preserv.)**
    1.  Performs any combination of following tasks to can, freeze, preserve, or pack food
20  products: Dumps or places food products in hopper, on sorting table, or on conveyor.
    Sorts or grades products according to size, color, or quality. Feeds products into
21  processing equipment, such as washing, refrigerating, peeling, coring, pitting, trimming,
    grinding, dicing, cooking, or slicing machines. Trims, peels, and slices products with
22  knife or paring tool. Feeds empty containers onto conveyor or forming machines. Fills
    containers, using scoop or filling form, or packs by hand [PACKAGER, HAND (any
23  industry) 920.587-018]. Counts, weighs, or tallies processed items according to
    specifications. Inspects and weighs filled containers to ensure product conforms to quality
24  and weight standards. Places filled containers on trays, racks, or into boxes. Loads,
    moves, or stacks containers by hand or handtruck, and cleans glass jar containers, using
25  airhose. May be designated according to work performed as Dumper (can. & preserv.);
    Peeler (can. & preserv.); Sorter (can. & preserv.); Trimmer (can. & preserv.).
26  *GOE: 06.04.15 STRENGTH: L GED: R2 M2 L2 SVP: 2 DLU: 78*

light work,[6] and this limitation was consistent both with the medical record and plaintiff's own

testimony.  AT 20, 143, 145, 158, 159, 166-68, 221, 225, 257[7]; cf. AT 35 (plaintiff testified she

lifted cans off of line but only had to lift gallon[8] cans ten times per day);[9] AT 42 (plaintiff

testified she could reach with left arm for five minutes and hold objects with left hand for a few

minutes).  The job description as provided in the DOT, which required only the performance of

unskilled, repetitive tasks and limited contact with coworkers, supervisors and the public, also is

consistent with the mental limitations found by the ALJ, which are supported by the record.

AT 20, 171, 182, 186-87, 230.  There was no error in the step four analysis.

     The ALJ's decision is fully supported by substantial evidence in the record and

---

[6]  20 C.F.R. § 404.1567(b) provides:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.

[7]  Plaintiff underwent an electrodiagnostic evaluation on May 13, 2004, a date preceding the date of the ALJ's decision but postdating the hearing.  The recommendation as a result of that testing was plaintiff should have a trial wrist orthosis as an initial conservative management. Because this evidence was incorporated into the record by the Appeals Council, the court has considered it in determining whether substantial evidence supports the ALJ's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (where plaintiff submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, court may properly consider the additional materials because the Appeals Council addressed them in the context of denying plaintiff's request for review); see also Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting that where the Appeals Council declined to review the decision of the ALJ after examining the entire record, including new material, court considers both the ALJ's decision and the additional materials submitted to the Appeals Council).  Here, only conservative treatment was recommended and there is no evidence as to whether such treatment failed or was even tried by plaintiff.  Also, as discussed above, there was no clinical correlation with the nerve conduction results and the electromyogram, even for the affected area, was within normal limits.

[8]  The court takes judicial notice under Federal Rule of Evidence 201 that a gallon of water weighs 8.345 pounds.

[9]  The form filled out by plaintiff regarding her job duties conflicts somewhat with plaintiff's testimony.  AT 96.  It was within the ALJ's province to resolve this conflict.

9

based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

      1.  Plaintiff's motion for summary judgment or remand is denied, and

      2.  The Commissioner's cross-motion for summary judgment is granted.

DATED:  March 28, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006
hayes2652.ss